Filed 4/11/13  P. v. Mendez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE VICTOR MENDEZ,<br><br>    Defendant and Appellant. | G046167<br><br>(Super. Ct. No. 11WF0570)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed in part and reversed in part.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was convicted of aggravated assault, making a criminal threat, possessing a weapon on school grounds and actively participating in a criminal street gang, aka street terrorism. The jury also found to be true enhancement allegations appellant used a knife and acted for the benefit of a gang. We hold there is sufficient evidence to uphold the gang enhancement. However, because appellant acted alone in committing his crimes, his conviction for street terrorism must be reversed. In all other respects, we affirm the judgment.

FACTS

Appellant is a self-professed member of West Trece, a Hispanic criminal street gang that claims territory in Westminster. He is also the "honorary uncle" of a West Trece member known as "Little Penguin." Appellant and Little Penguin frequented a house located in West Trece territory. The victim in this case, Manuel Reyes, rented a room at the house but was not a gang member. He was aware, however, that appellant was affiliated with West Trece.

On March 8, 2011, a dispute arose at the house when the landlady accused Little Penguin of stealing something from her. The accusation escalated into a fight between Little Penguin and the landlady's 15 year-old son. Reyes intervened by punching Little Penguin. Little Penguin pulled a knife, prompting Reyes to back away. At that point, Little Penguin retreated as well and the confrontation ended.

The next morning, Reyes was approached on the street by appellant, who was riding a small bike. Appellant pulled out a knife and chased Reyes. Appellant told him, "You beat up my little homie so now you're gonna get yours." He also threatened to "stick" Reyes and to kill him. Appellant came within five feet of Reyes but never touched him. The chase ended abruptly on the grounds of Johnson Middle School when a counselor yelled out the police were coming. Upon hearing this, appellant warned Reyes, "Don't worry, I'm gonna come back and I'm gonna get you." He then fled the area.

Reyes was so scared during the incident that he defecated in his pants. When the police arrived, he spoke to several officers at the scene and told them what happened. Officer Michael Ogawa wanted to know if appellant ever said he was from West Trece during the incident, and Reyes said, "He never came up and said . . . I'm from West . . . ." Phrasing the question differently, Ogawa then asked Reyes if appellant "did the old, you know, West, 'Hey, man, I'm fuckin' this and that'. . . ." Again, Reyes said no.

However, a few minutes later, when Ogawa asked if appellant "yell[ed] out 'I'm going to get you from West' or 'hey . . . my homies from West we're going to get you?'" Reyes replied, "Yeah. He said that." Reyes then quoted appellant shouting "We're going to get you, we're from West, fuck you." Recognizing this was a change from Reyes' previous answers, Ogawa asked him, "Oh, so he did claim he's from West?" "Yeah" was Reyes's reply.

While the police were questioning Reyes, Police Officer James Bodine stopped appellant less than a mile away. Bodine asked appellant if he had a knife on him, and appellant said he had one in his pocket. Bodine did not find a knife when he searched appellant, but a knife was found near the school later that day.

At trial, Reyes testified appellant said he was from West Trece when he was chasing him. On this point, defense counsel attempted to impeach Reyes with his prior inconsistent statements to Officer Ogawa. Defense counsel also brought out the fact Reyes had previously been convicted of several crimes, including assault with a deadly weapon. There was evidence Reyes pulled a knife during the assault and later damaged the victim's car out of revenge. Defense counsel argued this showed Reyes was vindictive and likely exaggerated appellant's actions in the instant case to get him in trouble.

Police Officer Edward Esqueda testified as the prosecution's gang expert. He said respect is very important to criminal street gangs, and if a gang member is

disrespected, the gang is expected to retaliate with equal or greater force. Retaliation instills fear and restores respect for the gang. And if the retaliating member uses a weapon, it will increase the amount of respect he and his gang receive.

Testifying further, Esqueda said assault with a deadly weapon is one of the primary activities of the West Trece gang. He also opined appellant's attack on Reyes had many of the trappings of gang-related payback. For instance, the attack came on the heels of the incident involving Little Penguin, which appellant referenced during the attack. Also, appellant allegedly yelled out his gang's name during the attack, which, according to Esqueda, is something gang members often do to intimidate their victims and to let them know who is behind the attack. Esqueda concluded that, even if appellant did not shout out West Trece to Reyes, the attack still would have benefited his gang because it demonstrated the gang was not going to tolerate any hostility or disrespect toward its members.

The jury acquitted appellant of attempted murder but found him guilty of the remaining charges described in the introduction above. It also found true allegations appellant acted for the benefit of a criminal street gang and personally used a deadly weapon. After finding appellant had suffered a prior serious felony conviction, the court sentenced him to 18 years in prison.

I

Appellant argues the evidence is insufficient to support the jury's finding he acted for the benefit of a criminal street gang. Although he admits he assaulted Reyes and threatened him with a knife, he claims there is simply no credible evidence his actions were motivated by a desire to promote his gang. We disagree.

"In reviewing a challenge to the sufficiency of the evidence, 'we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence . . . ."'" (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) "Although we must ensure the evidence is reasonable, credible, and of solid value,

4

nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment . . . . Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Penal Code section 186.22, subdivision (b) authorizes a sentence enhancement when the defendant "is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." However, not every crime committed by a gang member is a gang-related crime for purposes of this provision. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) With that in mind, appellant argues the evidence shows that, in assaulting Reyes, he was not trying to benefit his gang, but simply standing up for his "nephew" Little Penguin as an act of familial pride.

The linchpin of appellant's argument is that Reyes was lying when he claimed appellant yelled out West Trece during the attack. Appellant claims the record is devoid of credible evidence he actually yelled the name of his gang, and absent proof that he did, the jury's finding on the gang enhancement cannot stand. Appellant's claim fails on both factual and legal grounds.

In assailing Reyes' credibility, appellant argues his responses to Officer Ogawa's questions appear stilted, as though he was simply echoing the officer's suggestive questions. He also points out that Reyes gave inconsistent statements to Ogawa, and he was impeached by virtue of his prior convictions. Appellant contends, as he did at trial, that in light of all these factors, no reasonable person could possibly conclude Reyes was telling the truth on the witness stand.

5

Reyes was not a perfect witness, to be sure. However, his testimony was neither physically impossible nor inherently improbable. In speaking with Officer Ogawa, he thrice stated that appellant referred to West Trece during the attack. And at trial, he affirmed this was true. Reyes was subjected to rigorous cross-examination, and the jury had ample opportunity to assess his credibility. We are simply not in a position to second-guess the jury's finding he was a believable witness. Rather, as explained above, we must accord great deference to the jury's findings and review the judgment in the light most favorable to the judgment. Viewed in that light, we are not inclined to presume Reyes was lying when he testified that appellant referenced West Trece during the attack.

Even if appellant did not mention his gang during the attack, the jury could still reasonably find his crimes were gang-related, given the circumstances under which they occurred. The day before the crimes took place, Reyes punched one of appellant's fellow gang members at a house where the gang hangs out. As the gang expert explained, gang members are not inclined to take such slights sitting down. Rather, they are expected to retaliate swiftly and forcibly to prove their toughness. True to form, appellant tracked down Reyes on the street, pulled a knife on him, and threatened to kill him for messing with his "homie."

It is true that the "homie" in question was not only appellant's fellow gang member, but also his honorary nephew. Appellant argues this gave him a personal, nongang motive for going after Reyes. However, appellant's intent was a question of fact for the jury. When, as here, "the jury, [is] presented with the competing inferences, [it is] entitled to credit the evidence that the attack [in question] was gang related, not family related." (*People v. Albillar, supra,* 51 Cal.4th at p. 62.) Suffice it say, there is substantial proof, both in the form of expert and nonexpert evidence, to support the jury's finding in that regard. Therefore, we are powerless to disturb it.

6

II

Although the jury's finding on the gang enhancement must stand, the law is now clear that a defendant cannot be convicted of the substantive crime of street terrorism if he acts alone in committing the subject offenses. (*People v. Rodriguez* (2012) 55 Cal.4th 1125.) Because appellant acted by himself in this case, his conviction for street terrorism must be reversed. (*Id*. at p. 1139.) However, given that appellant's sentence for that offense was stayed pursuant to Penal Code section 654, there is no need for resentencing.

DISPOSITION

Appellant's conviction for street terrorism on count five is reversed. The clerk of the trial court is directed to prepare a new abstract of judgment reflecting this and to send a certified copy of the abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.

7